USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/12/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Plaintiff,

    - v. -

GINSBURG DEVELOPMENT COMPANIES, LLC,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16 Civ. 7301 (NSR)

**STIPULATION AND ORDER OF
SETTLEMENT AND DISMISSAL**

WHEREAS, on September 19, 2016, the United States brought this action (the "Action") to enforce the accessible design and construction provisions of the Fair Housing Act (the "FHA"), codified at 42 U.S.C. § 3603(f)(3);

WHEREAS, on September 28, 2016, the Court entered a Consent Order of Preliminary Injunction in this Action, requiring Ginsburg Development Companies, LLC ("GDC") to ensure that four residential apartment complexes that GDC was then constructing will comply with the FHA's Accessible Design requirements;

WHEREAS, on April 12, 2017, GDC responded to the Complaint;

WHEREAS, the United States and GDC have reached a stipulation on certain terms that resolve this matter in its entirety, as set forth in Exhibit A attached hereto (the "Settlement Stipulation");

WHEREAS, the Settlement Stipulation does not modify, and shall not be construed to modify, the terms and requirements of the Preliminary Injunction in relation to the four residential apartment complexes subject to that injunction;

IT IS HEREBY STIPULATED AND AGREED, by and between the United States and GDC, as follows:

1.     This Action is stayed for a period of 60 days to permit GDC to implement the

requirements of paragraphs 3-4, 7-8, 27-31, 38-39, 40, and 45 of the Settlement Stipulation.

2.      No later than 60 days from the entry of this Stipulation and Order, the United States and GDC shall submit a joint status letter to the Court to indicate whether the requirements of paragraphs 3-4, 7-8, 27-31, 38-39, 40, and 45 of the Settlement Stipulation have been implemented.  In the event that the joint status letter submitted by the United States and GDC indicates that the implementation of those requirements has been completed, this Action shall be dismissed without prejudice to reinstatement upon the application of any party in the event of a breach of the provisions of the Settlement Stipulation, provided that such application is made within one year following the entry of this Stipulation and Order.

3.      In the event that no party has applied for reinstatement pursuant to Paragraph 2 above and that the parties have not agreed, in writing, to extend the term of the Settlement Stipulation, this action shall be dismissed with prejudice and not subject to reinstatement after three years following the entry of this Stipulation and Order.

4.       Each party to the action shall bear its own costs and attorney's fees.

GEOFFREY S. BERMAN
United States Attorney

By: _____
LI YU
NATASHA WAGLOW TELEANU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. (212) 637-2734/2528
*Counsel for the United States*

GINSBURG & REDMOND, P.C.

By: _____
MARK DAVID GINSBURG
STEVEN CRAIG HAGWIN
245 Saw Mill River Road, Suite 106
Hawthorne, New York 10603
Tel. (914) 495-3515
*Counsel for GDC*

SO ORDERED

_____
HON. NELSON STEPHEN ROMÁN
UNITED STATES DISTRICT JUDGE

DATED: April 12, 2018
         White Plains, New York

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>GINSBURG DEVELOPMENT COMPANIES, LLC,<br><br>　　　　　　　Defendant. | 16 Civ. 7301 (NSR)<br><br><br>**STIPULATION OF<br>SETTLEMENT** |

## INTRODUCTION

This Stipulation of Settlement (the "Stipulation") is entered into between Plaintiff the United States of America (the "United States") and defendant Ginsburg Development Companies, LLC, along with its subsidiaries and affiliates that own and operate the following rental complexes: Riverside and Parkside in Haverstraw, New York (collectively, "GDC" or "Ginsburg Development");

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action, filed on September 19, 2016, alleges that GDC has engaged in a pattern or practice of discrimination, and has denied rights to a group of persons in a manner raising an issue of general public importance, by failing to design and/or construct the Riverside and Parkside complexes, two residential apartment complexes in Haverstraw, New York, with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, Riverside and Parkside are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

**A.      Defendant**

WHEREAS, Ginsburg Development, is a New York business organization that,

directly and/or operating through its subsidiaries and affiliates, developed Riverside and Parkside

and, in that capacity, participated in the design and construction of these apartment complexes;

**B.      Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling

units, and one or more elevators, designed and constructed for first occupancy after March 13,

1991, are Covered Multifamily Dwellings and must include certain basic features of accessible

design as set forth in 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that

for Covered Multifamily Dwellings: (i) the public use and common use portions of such

dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors

designed to allow passage into and within all premises within such dwellings are sufficiently

wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within

such dwellings contain the following features of adaptive design: (I) an accessible route into and

through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental

controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation

of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair

can maneuver about the space.  42 U.S.C. § 3604(f)(3)(c) (these provisions and features are

referred to herein as the "Accessible Design Requirements");

WHEREAS, on September 28, 2016, the Court entered a Consent Order of

Preliminary Injunction (the "Preliminary Injunction") in this Action, requiring GDC to ensure

that four residential apartment complexes that GDC was then constructing will comply with the

FHA's Accessible Design requirements;

2

WHEREAS, this Stipulation does not modify, and shall not be construed to modify, the terms and requirements of the Preliminary Injunction in relation to the four residential apartment complexes subject to that injunction;

**C.     Conditions at Riverside and Parkside**

WHEREAS, Riverside is a residential apartment building located at 4100 Southernly Pointe Drive in Haverstraw, New York.  The Riverside complex contains 106 rental units and has elevator access. The public and common features at Riverside include a gym and a swimming pool;

WHEREAS, an inspection of Riverside was conducted on February 21 and June 9, 2017, and that inspection specifically identified, among others, the following conditions at Riverside that the United States alleges fail to meet the Accessible Design Requirements:

- Excessively high thresholds at entrances to some individual units, entrances to individual bathrooms, and patios in individual units that interfere with accessible routes for persons who use wheelchairs;

- The locations of thermostats, light switches, and electrical outlets in some of the individual units make them inaccessible to persons who use wheelchairs;

- Kitchen sinks and bathroom toilets in individual units lack sufficient clearance for persons who use wheelchairs;

- Mailboxes are mounted too high from the floor and too close to the wall to accommodate persons who use wheelchairs;

- Insufficient clear opening door widths in the fitness room bathroom;

- The force required to operate the doors to the fitness room bathroom and the first floor laundry room interferes with accessibility for persons with certain disabilities;

- The side grab bar in the fitness room bathroom is an insufficient distance for persons

with certain disabilities.

WHEREAS, Parkside is a residential apartment complex located at 2100 Round Pointe Drive in Haverstraw, New York.  The Parkside complex contains 110 rental units and has elevator access.

WHEREAS, an inspection of Parkside was conducted on December 7, 2016, and that inspection specifically identified, among others, the following conditions at Parkside that the United States alleges fail to meet the Accessible Design Requirements:

- Excessively high thresholds for the patios of some individual units that interfere with accessible routes for persons who use wheelchairs;

- The locations of thermostats and electrical outlets in some of the individual units make them inaccessible to persons who use wheelchairs;

- Bathroom countertops in some of the individual units obstruct the ability to install grab bars for persons with certain disabilities;

- Mailboxes are mounted too high from the floor and too close to the wall to accommodate persons who use wheelchairs;

- The side grab bar, lavatory, and toilet paper dispenser in the fitness room bathroom are positioned at insufficient locations to enable use by persons with certain disabilities.

**D.     Agreement of the Parties to this Stipulation**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties' agreement to this Stipulation is not intended to and does not limit GDC, individually or collectively, from instituting a separate action seeking contribution,

4

or damages in the nature of indemnification or breach of contract or for any other reason from any individual or entity involved in the design and/or construction of any property that is the subject of this Stipulation; and

WHEREAS, GDC agrees to make modifications to Riverside and Parkside as set forth herein and the attached appendices; and the parties agree to this Stipulation.

**It is hereby AGREED, by and between the parties:**

### I. COMPLIANCE WITH THE FHA

1.     GDC and each of its officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, agree that they will not discriminate on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604.

### II. RETROFITS AT RIVERSIDE AND PARKSIDE

2.     The United States alleges that Riverside and Parkside were not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines"). Without admitting liability, GDC agrees to address the conditions alleged to be FHA violations at Riverside by making the modifications set forth in Appendices A-1 and B-1, and agrees to address the conditions alleged to be FHA violations at Parkside by making the modifications set forth in Appendices A-2 and B-2.

**A.     Modifications to the Public and Common Use Areas**

3.     GDC acknowledges that certain of the public and common use areas at Riverside and Parkside as herein enumerated do not meet the requirements of any recognized safe harbor for compliance with the FHA. GDC agrees to modify the public and common use areas of Riverside and Parkside by taking the actions described herein and in Appendices A-1 and A-2,

respectively.  No later than 10 days after the execution of this Stipulation, GDC shall have finished all the retrofits listed in Appendices A-1 and A-2.

      4.     GDC shall certify to the United States in writing that the retrofits listed in Appendices A-1 and A-2 were completed.

**B.    Modifications to Dwelling Unit Interiors**

      5.     GDC acknowledges that certain of the dwelling unit interiors of Riverside and Parkside as herein enumerated do not meet the requirements of any recognized safe harbor for compliance with the FHA.  GDC agrees to modify certain of the dwelling unit interiors of Riverside and Parkside by taking the actions described herein and in Appendices B-1 and B-2, respectively.

      6.     For each unit at Riverside listed in Appendix B-1 and each unit at Parkside listed in Appendix B-2, as soon as reasonably possible, but no later than six (6) months from the execution of this Stipulation (unless otherwise specified in Appendices B-1 and B-2), GDC shall finish the retrofits listed in Appendix B-1 at Riverside and those listed in Appendix B-2 at Parkside.  GDC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

      7.     Within thirty (30) days from the date of the execution of this Stipulation, GDC shall inform each resident who resides in an individual dwelling unit that is subject to being retrofitted at Riverside and Parkside, respectively, that: (1) the United States has alleged that certain features of the resident's unit do not meet the accessible and adaptive design requirements of the FHA and that, to settle this lawsuit, GDC agreed to retrofit certain features of the unit to make them more accessible; (2) the retrofits set forth in Appendices B-1 and B-2 will be provided within 45 days of any request but will, in any event, take place within six months, unless otherwise specified in the Stipulation; and (3) the scheduling of the retrofits will take into

account the preferences and convenience of the resident or future resident and that relocation costs, if any, will be provided in advance. The notice shall be substantially in the form of Appendix C and may be delivered electronically or in hard copy.

8.      GDC shall certify to the United States in writing that the notices described in paragraph 7 have been distributed and shall specify the manner in which they were distributed, within thirty (30) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

### III. NO ADVERSE ACTION

9.      Neither present nor future residents of Riverside or Parkside may be charged any additional rent, deposit, fee, or other consideration for the units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits required under this Stipulation. GDC shall take no adverse action against any present or future resident of Riverside or Parkside because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Stipulation. Nothing in this paragraph, however, shall restrict or impede GDC's rights with respect to any of the properties that are the subject of this Stipulation to continue, in a non-discriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including increasing rents after the expiration of a current lease due to an increase in the market value of the unit, whether or not such increase is on account of upgrades to such unit (other than retrofits required under this Stipulation) done at or about the same time as retrofits required under this Stipulation. Performance of the retrofits required by the terms of this Stipulation does not constitute a diminution in services provided at Riverside or Parkside.

## IV.  Impediments to Performance

10.     In the event that any act or omission beyond GDC's control and occurring without

its fault or negligence affects the performance of any requirement in Sections II of the

Stipulation, GDC and the United States shall endeavor, in good faith, to determine whether

modifications to this Stipulation are necessary.  In particular, if a resident at Riverside or

Parkside refuses (whether lawfully or not) to vacate a unit such that a retrofit required to be

made under this Stipulation may not be made, the parties shall endeavor, in good faith, to

reach agreement on a substitute unit in which a retrofit can be made.  Nothing herein shall

be construed as requiring GDC to bring a lawsuit against a resident who refuses to allow

GDC to perform a retrofit to that resident's unit, as specified in Section II of this Stipulation;

and nothing herein shall be construed as requiring GDC to perform any act beyond the

expiration of this Stipulation except as specified in this paragraph and Paragraph 18.

## V.  Neutral Inspector

11.     GDC shall enter into a contract with a neutral inspector approved by the United

States ("Inspector") to conduct on-site inspections of all retrofits performed under this

Stipulation to determine whether modifications have been made in compliance with the

specifications in Appendices A-1 and B-1 at Riverside and Appendices A-2 and B-2 at Parkside.

The Inspector shall have expertise in the design and construction requirements of the FHA.

12.     The Inspector may, upon request of GDC, review and comment upon the

sufficiency of all proposed retrofits in writing in advance of any retrofit by GDC, but such

review and comment shall be completed no later than thirty (30) days after the request.

13.     An initial inspection of Riverside and Parkside shall take place within thirty (30)

days of the completion of all of the retrofits (except for retrofits to be made at a resident's

8

request, on vacancy, or prior to the expiration of the Stipulation) set forth in, respectively, Appendices A-1 and B-1 and Appendices A-2 and B-2, or as soon thereafter as practicable.

14.    With regard to the retrofits for Riverside and Parkside that are required to made at a resident's request, on vacancy, or prior to the expiration of the Stipulation, and as set forth in Appendices B-1 and B-2, an initial inspection of those retrofits shall take place within thirty (30) days after four years have passed from the execution of this Stipulation.

15.    For each initial inspection, GDC shall give the United States at least twenty-one (21) days prior notice of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

16.    The Inspector shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to GDC and to the United States.[1]  The report shall state whether the retrofits required by the applicable Appendix or approved retrofit proposal have been completed, and shall list any required retrofits that were not completed.

17.    If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, or retrofit proposals, GDC shall correct any deficiencies within sixty (60) days and shall pay for another inspection by the same Inspector to certify that the deficiencies have been corrected.  This process shall continue until the Inspector certifies that all of the necessary modifications have been made.  GDC shall pay all of the Inspector's reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings.  Upon reasonable notice, representatives of the United States

---

[1]    For purposes of this Stipulation, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007.  Electronic courtesy copies also shall be delivered to the undersigned Assistant United States Attorneys.

shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Stipulation, to ensure compliance.

18.     Nothing in this Stipulation shall relieve GDC of its obligations to schedule inspections and/or correct deficiencies as set forth in this Section (including, but not limited to, inspection of the retrofits that GDC is required to make prior to the expiration of the Stipulation) even if such obligations extend beyond the duration of this Stipulation. GDC shall be entitled to have its representatives, agents and/or experts attend any such inspections

### VI. TRANSFER OF INTEREST IN PROPERTIES

19.     The sale or transfer of ownership, in whole or in part, of GDC's interest(s) in Riverside or Parkside shall not affect its continuing obligation to retrofit, and/or conduct or allow inspections or surveys of, Riverside or Parkside, as specified in this Stipulation, unless GDC has obtained in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Stipulation to make retrofits and allow or conduct inspections or surveys as set forth in this Stipulation, and will be subject to the jurisdiction of this Court.

20.     Should GDC decide to sell or transfer any of their ownership in Riverside or Parkside in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in this Stipulation for Riverside or Parkside, GDC will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Stipulation and written notice that the property is subject to this Stipulation, including specifically GDC's obligations to either (i) complete required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or transferee by obtaining the purchaser or transferee's commitment to be bound by this Stipulation, subject to the jurisdiction of this Court; and (b) provide to the United States, by facsimile and first-class or overnight mail,

written notice of the owner's intent to sell or transfer ownership, along with a copy of the notice

sent to each buyer, and each buyer's name, address and telephone number.

### VII. NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

21.    GDC shall design and construct all new Covered Multifamily Dwellings in full

compliance with either (i) the Guidelines, or (ii) a standard designated as an FHA safe harbor by

the Department of Housing and Urban Development (each a "Standard").  During the term of

this Stipulation, upon reasonable notice, the United States will be permitted reasonable access to

such properties to inspect for compliance with such standards, rules, and laws.

22.    For each new Covered Multifamily Dwelling that GDC constructs during the term

of this Stipulation, GDC shall retain an FHA compliance consultant (the "FHA Consultant") to

help ensure that the as-constructed features at such properties comply with the FHA's Accessible

Design Requirements.  GDC shall direct its employees, agents, and/or contractors to seek the

FHA Consultant's advice regarding the selection of appliances (*e.g.*, refrigerators and ranges)

and fixtures (*e.g.*, doors, thresholds, and lavatories); the effect of deviations from the architects'

plans on the accessibility of conditions at the property; as well as other issues that arise during

construction that affect accessibility.  Further, prior to the completion of construction of each

building, GDC shall arrange for the FHA Consultant to conduct a visit of the building to identify

any construction issues that may result in inaccessible conditions and recommend appropriate

solutions.

23.    The agreement or contract between GDC and the FHA Consultant shall specify

that the FHA Consultant is being retained pursuant to this Stipulation.  Further, within thirty (30)

days of retaining the FHA Consultant, GDC shall provide a copy of this Stipulation to the FHA

Consultant and secure the signed statement from the FHA Consultant acknowledging that he or

she has received and read the Stipulation and has had an opportunity to have questions about the Stipulation answered. This statement shall be substantially similar to the form of <u>Appendix D</u>.

24.     During the term of this Stipulation, GDC shall submit, on an annual basis, a certification to the counsel for the United States affirming that they have retained a FHA Consultant for each Covered Multifamily Dwelling under construction during that year and specifying each covered multifamily dwelling for which a FHA Consultant was retained by GDC to provide advice and the identity (and affiliation, if applicable) of the FHA Consultant. GDC shall provide this certification within 30 days of the end of each 12-month period from the execution of this Stipulation.

25.     For the duration of this Stipulation, GDC shall maintain, and provide to the United States upon request, the following information and statements regarding any new multifamily dwellings intended to be developed, built, designed, and/or engineered in whole or in part, by GDC or by any entities in which GDC has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or more ownership share:

- the name and address of the project;
- a description of the project and the individual units;
- the name, address, and telephone number of the civil engineer(s) involved with the project;
- a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering documents for site work for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply;

- the name, address and telephone number of the architect(s) who are employed or retained by GDC and are involved with the project;

- a statement from all architect(s) who are employed or retained by GDC and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

26.     If the engineering documents or architectural plans referred to in paragraph 25 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA, GDC shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by GDC and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

### VIII. PAYMENTS TO AGGRIEVED PERSONS

27.     Within 30 days of execution of this Stipulation, GDC shall deposit in a non-interest-bearing account the sum of $55,000 for the purpose of compensating any aggrieved persons who may have suffered as a result of discriminatory housing practices by GDC at Riverside and Parkside.  This deposited money shall be referred to as the "Initial Settlement Fund."

28.     Within thirty (30) days of the execution of this Stipulation, GDC shall publish the Notice to Persons Who May Have Suffered from Inadequate Accessible Features at Riverside or

Parkside ("Notice") at <u>Appendix E</u> informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in the following newspapers: the *Rockland County Times* and the *Journal News*. The three publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday (or Saturday, if the newspaper is not published on Sunday).  Within 10 days of each publication, GDC shall provide the newspapers containing the Notice to the United States.

29.     Within thirty (30) days of execution of this Stipulation, GDC shall place on the websites http://gdcrentals.com/riverside/ and http://gdc-homes.com/portfolio_item/parkside/ a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF").  The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at [Insert Riverside or Parkside]," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no smaller than the font size for any of the terms "Green Design," "Floor Plans," "Residences," "Amenities," "Neighborhood," "Gallery," and "Contact" as they appeared as on December 7, 2017.

30.     Within thirty (30) days of the execution of this Stipulation, GDC shall send a copy of the Notice to each of the following organizations:

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York 10036;

Fair Housing Justice Center
30-30 Northern Blvd. #302,
Long Island City, New York 11101;

Legal Aid Society of Rockland County, Inc.
2 Congers Road
New City, NY 10956;

Legal Services of the Hudson Valley
90 Maple Avenue

White Plains, NY 10601;

Rockland Independent Living Center (RILC)
873 Route 45, Suite 108
New City, NY 10956;

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York 11370.

  31. Within thirty (30) days of the execution of this Stipulation, GDC shall send, by

first-class mail, postage pre-paid, a copy of the Notice to each identifiable past or present

resident at Riverside and Parkside.  For past residents, GDC will have complied with the

requirements of this paragraph by mailing such notice to the forwarding address provided by the

former resident at the time the former resident moved out of Riverside and Parkside.  Within

seventy-five (75) days of execution of this Stipulation, GDC shall provide the United States with

proof that the Notices have been sent.  The United States may make its own efforts to locate and

provide notice to potential aggrieved persons.

  32. GDC shall permit the United States, upon reasonable notice, to review any

records that may reasonably facilitate its investigations to locate allegedly aggrieved persons and

make determinations regarding their potential claims.  In addition, GDC shall identify to the

United States any allegedly aggrieved persons or any past, present, or prospective residents of

Riverside or Parkside who have disabilities or regular guests with disabilities, to the extent that

GDC, or their employees or agents at Riverside or Parkside, possess the information required to

make such identifications.

  33. The United States shall investigate the claims of allegedly aggrieved persons and

shall determine which persons are aggrieved and an appropriate amount of damages that should

be paid to each such person.  The United States will inform GDC in writing of each of its

determinations, together with a copy of a sworn declaration from each aggrieved person setting

forth the factual basis of the claim.  If the United States determines that the Initial Settlement

Fund is insufficient to compensate all aggrieved persons at Riverside and Parkside, the United

States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a

total amount exceeding the amount in the Initial Settlement Fund, but not exceeding $125,000.

34.     If GDC disputes the amount of a payment to an aggrieved person, GDC shall,

within fourteen (14) days of receiving notice of a determination from the United States (a

"Determination"), provide a written objection to the United States, along with any information or

documents that they believe may refute the aggrieved person's claim.  The United States shall

give due consideration to any objections it receives from GDC and shall submit, following any

objection, its reconsidered determination (a "Reconsidered Determination") to GDC, in writing,

setting forth the aggrieved person and the amount that the aggrieved person shall be paid.  If

GDC disputes the Reconsidered Determination, it may—within twenty (20) days after receiving

the Reconsidered Determination—file an application with the Court to reinstate this case and

request that the Court adjudicate GDC's objection to the Reconsidered Determination.  In such

an event, the Court may sustain or overrule the objection.

35.     GDC shall, no later than twenty (20) days after receiving a Determination to

which no objection has been made, or twenty-five (25) days after receiving a Reconsidered

Determination to which no objection has been filed with the Court, or ten (10) days after any

decision by the Court overruling a filed objection, whichever is earliest, deliver to the United

States checks payable to aggrieved persons in the amounts identified by the United States.  In no

event shall the aggregate of all such checks exceed the amount $125,000 plus accrued interest.

No aggrieved person shall be paid until he/she has executed and delivered to the United States

the release at Appendix F.

36.     No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under this Stipulation.

37.     In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Stipulation, any remainder in the Initial Settlement Fund shall be paid to the United States Treasury.

### IX. CIVIL PENALTIES

38.     Within thirty (30) days of the date of the execution of this Stipulation, GDC shall pay a civil penalty of $50,000 pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.  GDC shall pay said sum by submitting a check made payable to the "United States of America" to the United States.

### X. EDUCATIONAL PROGRAM

39.     Within thirty (30) days of the execution of this Stipulation, GDC shall provide a copy of this Stipulation to all of its agents and employees involved in the design or construction of Riverside or Parkside and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Stipulation, and has had an opportunity to have questions about the Stipulation answered.  This statement shall be substantially similar to the form of Appendix G.  During the term of this Stipulation, any new employee, agent, or supervisor of GDC who will be involved in the design or construction of a new Covered Multifamily Dwellings shall, within thirty (30) days after the date he or she commences an agency or employment relationship with GDC, be given a copy of this Stipulation by GDC, and

17

GDC shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read the Stipulation, and has had an opportunity to have questions about the Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix G</u>.

40.     Within 30 days of the execution of this Stipulation, GDC shall provide a copy of this Stipulation to all their agents and employees involved in rental of units at Riverside or Parkside, and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Stipulation, and has had an opportunity to have questions about the Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix G</u>.

41.     During the term of this Stipulation any new employee, agent, or supervisor of GDC who will be involved in the renting of units at Riverside or Parkside shall, within 30 days after the date he or she commences an agency or employment relationship with GDC, be given a copy of this Stipulation by GDC, and GDC shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read the Stipulation, and has had an opportunity to have questions about the Stipulation answered.  This statement shall be substantially similar to the form of <u>Appendix G</u>.

42.     In lieu of providing individuals or entities with copies of the Stipulation as required by the preceding paragraphs of Section X, GDC may instead provide a summary of the Stipulation with the United States' advance written approval of the form and content of any proposed summary.

43.     GDC shall also ensure that its employees and agents who have supervisory authority over the design and/or construction of Covered Multifamily Dwellings have a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development,

Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998).  GDC and its employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications. The educational program provided to employees not engaged in design, construction, or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

44.    Within ninety (90) days of the date of execution of this Stipulation, GDC and all employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA.  The training shall be conducted by a qualified third-party individual, not associated with GDC or its counsel, and approved by the Department of Justice; and any expenses associated with this training shall be paid by GDC.  GDC shall provide to the United States, thirty (30) days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of any training outlines and materials to be distributed by the trainers.  GDC shall provide to the United States, thirty (30) days after the training, certifications executed by GDC and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix H.

## XI. Notice of GDC's Non-Discrimination Policy

45.    Within thirty (30) days of the date of execution of this Stipulation, GDC shall post and prominently display in the sales or rental offices of all Covered Multifamily Dwellings owned or operated by GDC, a sign no smaller than ten (10) by fourteen (14) inches indicating

that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

46.     For the duration of this Stipulation, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that GDC may develop or construct, GDC shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the FHA.

47.     One hundred and eighty (180) days after the date of execution of this Stipulation, GDC shall submit to the United States an initial report regarding the signed statements of GDC's employees and agents who have completed the training program specified in paragraph 44 of this Stipulation. Thereafter, during the term of this Stipulation, GDC shall, on the anniversary of the execution of this Stipulation, submit to the United States a report containing the signed statements of new employees and agents that, in accordance with paragraphs 39-42 of this Stipulation, they have received and read the Stipulation or a summary thereof, and had an opportunity to have questions about the Stipulation or such summary answered, except that the last report shall be due sixty (60) days prior to the anniversary.

48.     For the duration of this Stipulation, GDC shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or judicial fair housing complaint regarding any property owned, managed, and/or designed or constructed by them, or, to the extent known, against any employees or agents of GDC working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, GDC shall also provide the United States all information it may request concerning any such complaint. GDC shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

49.     For the term of this Stipulation, GDC is required to preserve all records related to this Stipulation for Riverside and Parkside and any other Covered Multifamily Dwellings designed, constructed, owned, or acquired by them during the duration of this Stipulation. Upon reasonable notice to GDC, representatives of the United States shall be permitted to inspect and copy any records of GDC or inspect any developments or residential units under GDC's control bearing on compliance with this Stipulation at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to GDC from such inspections.

## XII.  LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

50.     GDC is hereby notified that, in the event that GDC fails to comply with any of the terms of this Stipulation and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation. See 26 U.S.C. § 42(m)(1)(B)(iii).

## XIII.  TERM OF STIPULATION

51.     This Stipulation shall, subject to Paragraphs 10 and 18, remain in effect for three (3) years following execution of this Stipulation. By executing this Stipulation, the parties agree that in the event that GDC engages in any future conduct occurring during the term of this Stipulation that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

52.     The term of this Stipulation may be extended by the mutual written agreement of the parties.

53.     In the event the United States reinstates this Action, as contemplated by the Settlement Stipulation, GDC agrees pursuant to Federal Rule of Civil Procedure 15(a)(2) that the

United States may amend the complaint to assert any claims that have not been released under this Stipulation.

54.     The parties agree that the only appropriate remedy for either party's failure to perform any non-monetary obligation contained in this Stipulation is specific performance.

55.     The United States and GDC shall endeavor, in good faith, to resolve any differences regarding interpretation of and compliance with this Stipulation prior to bringing such matters to the Court for resolution.

## XIV.  TIME FOR PERFORMANCE

56.     Any time limits for performance imposed by this Stipulation may be extended by the mutual written agreement of the United States and GDC, the consent to which shall not be unreasonably denied or withheld.

## XV.  MISCELLANEOUS

57.     The United States and GDC will bear their own costs and attorney's fees associated with this litigation.

58.     The United States and GDC understand and agree that this Stipulation and the

appendices thereto contain the entire agreement between them, and that any statements,

representations, promises, agreements, or negotiation, oral or otherwise, between the parties or

their counsel that are not included herein shall be of no force or effect.

_For the United States_:                          _For GDC_:

GEOFFREY S. BERMAN                    GINSBURG + REDMOND, P.C.
United States Attorney
                                      By:
By:                                       MARK D. GINSBURG, ESQ.
    LI YU                                 STEVE BAGWIN, ESQ.
    NATASHA W. TELEANU                    245 Saw Mill River Road
    JACOB LILLYWHITE                      Hawthorne, NY 10532
    LAUREN A. LIVELY                      _Attorneys for GDC_
    Assistant United States Attorneys     mdginsburg@grlawpc.com
    86 Chambers Street, 3rd Floor         sbagwin@grlawpc.com
    New York, New York  10007
    _Attorneys for the Government_
    Li.Yu@usdoj.gov
    Natasha.Teleanu@usdoj.gov
    Jacob.Lillywhite@usa.doj.gov
    Lauren.Lively@usa.doj.gov

DATED: April 11, 2018                  DATED: April 11, 2018
       New York, New York                     Hawthorne, New York

                                      SO ORDERED:

Dated: April 12, 2018

                                      HON. NELSON S. ROMAN
                                      UNITED STATES DISTRICT JUDGE

**APPENDIX A-1**

**PUBLIC AND COMMON USE AREAS AT RIVERSIDE**

Defendant shall finish the retrofits identified in this Appendix A-1.

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2**

**MAIL ROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Mailboxes | 56 mailboxes are located higher than 54" AFF | Will assign mailboxes that are 54" AFF maximum to residents on request.<br><br>If such reassignment is not possible, will provide alternative mail service by building staff for any resident requesting assignment of a mailbox below 54" AFF. Specifically, the managing agent or other building personnel will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |
| Mailboxes | 18 mailboxes have a centerline of less than 12" from obstruction (wall) | Will assign mailboxes with centerline of 12" min. for residents on request.<br><br>If such reassignment is not possible, will provide alternative mail service by building staff for any resident requesting assignment of a mailbox less than 12" from wall. Specifically, the managing agent or other building personnel will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |

1

## FITNESS ROOM TOILET ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door clear width | 31 5/8" min. clear width has not been provided when door is open 90 degrees | Will install off-set hinges to achieve 31 5/8" clear width. |
| Door opening force | Maximum opening force of door exceeds 5 pounds of force | Will adjust door closer so that 5 pounds maximum opening force can be achieved. |
| Side grab bar | Side grab bar is located 13" from rear wall | Will move grab bar so that it is 12" from rear wall, measured to the centerline of the escutcheon plate. |

## FIRST FLOOR LAUNDRY ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Door opening force | Maximum opening force of door exceeds 5 pounds of force | Will adjust door closer so that 5 pounds maximum opening force can be achieved. |

2

APPENDIX A-2

PUBLIC AND COMMON USE AREAS AT PARKSIDE

Defendant shall finish the retrofits identified in this Appendix A-2.

FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

MAIL ROOM

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Mailboxes | 48 mailboxes are located higher than 54" AFF | Will assign mailboxes that are 54" AFF maximum to residents on request.   .<br><br>If such reassignment is not possible, will provide alternative mail service by building staff for any resident seeking assignment of a mailbox lower than 54" AFF.  Specifically, the managing agent or other building personnel will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |
| Mailboxes | 18 mailboxes have a centerline of less than 12" from obstruction (wall) | Will assign mailboxes with centerline of 12" min. for residents on request.<br><br>If such reassignment is not possible, will provide alternative mail service by building staff for any resident seeking assignment of a mailbox less than 12" from wall.  Specifically, the managing agent or other building personnel will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |

1

## PUBLIC TOILET ROOM, FIRST FLOOR

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Side grab bar | Side grab bar is located 13" from rear wall | Will move grab bar so that it is 12" from rear wall, measured to the centerline of the escutcheon plate |
| Lavatory | Rim of lavatory at 35" AFF | Will lower lavatory to 34" max. AFF |
| Toilet paper dispenser | Toilet paper dispenser is not 7" to 9" from toilet or 36" max. from the rear wall | Will relocate toilet paper dispenser so that it is 7" to 9" from the toilet and 36" max. from the rear wall, measured to the outside edge of the dispenser |

2

**APPENDIX B-1**

**UNIT RETROFITS AT RIVERSIDE**

As soon as reasonably possible, but no later than 6 months from the execution of this Stipulation (unless otherwise specified below), Defendant shall finish the retrofits listed in this Appendix B-1.

**UNIT ENTRANCE DOORS – THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types B3, C3, C5, D3, C4, C2, B1, B2, C1.1, C6, D1, D5, D2 | 5/8" to 7/8" high on unit side, with 1:2 bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit may consist of transition strips.  Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |

**BATHROOM - MARBLE THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types B3, C3, C5, D3, B2, C1.1, C6, D1, D5, D2 | ½" to 1¾" high, with non-compliant bevel | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit may consist of transition strips.  Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |
| Unit Type B4 | 1" high on the hallway side, beveled at 1:2 | Will make flush, or provide ¼" high max. threshold, if not beveled, or provide ½" max. threshold, beveled at ratio of 1:2 max.  Retrofit may consist of transition strips.  Retrofit will be made upon the request of resident or prospective |

|  | resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |
|--|--|

**BALCONY DOOR THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Unit Types D1, D2, D5 | 1½" to 1 5/8" high, no bevel | Will provide transition strips with max 8.33% slope. Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |

**UNIT CONTROLS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| Unit Type D3 – Thermostat | Thermostat is located at 60 5/8" above finished floor ("AFF") | Will provide wireless thermostat control upon the request of a resident or prospective resident.[1] |
| Unit Type C4 – Light Switch | Light switch near thermostat is located 50" AFF | Will lower to 48" max. AFF, measured to the highest operable part |

**ELECTRICAL OUTLETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---------|-----------|----------------------|
| All Units | 13 1/4" to 14" AFF measured to the centerline of the outlets. | Will install power strips. |

---

[1] Defendants agree to maintain at least four (4) such remote controls at Riverside at all times.

2

**KITCHEN OUTLETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types B3, D5, B4 | Centerline of electrical receptacle is not 36" min. from the corner | Will provide wall-mounted power strips to provide outlets at least 36" from the corner. |
| Unit Types C3, C8, C5, D3, C2, B2, C1.1, D1, D5, D2 | Less than 12" from the face of the refrigerator | Will provide wall-mounted power strips to provide outlets at least 12" from the face of the refrigerator. |

**KITCHEN CLEARANCE**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Type D3, D5 | Countertop corner location sink centerline is 27½" to 27¾" from the adjacent base cabinet and 20" from the face of the refrigerator | Will adjust to provide for 24" centerline min. from the face of the refrigerator, or the face of the refrigerator partition, whichever extends further from the adjacent base cabinet upon the request of any resident or prospective resident or upon vacancy, whichever is the earliest. |

**BATHROOM TOILETS**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Type C5 (hall bathroom) | Centerline 19½" from the side wall | Will adjust to provide for centerline 16" to 18" from side wall upon the request of any resident or prospective resident. |
| Unit Types C1.1, C4 (hall bathroom), D1 | Centerline 15¾" from bathtub or side wall | Will adjust to provide for centerline 16" to 18" from bathtub, upon the request of a tenant or prospective tenant. |

3

**APPENDIX B-2**

**UNIT RETROFITS AT PARKSIDE**

As soon as reasonably possible, but no later than 6 months from the execution of this Stipulation (unless otherwise specified below), Defendant shall finish the retrofits listed in this Appendix B-2.

**PATIO DOOR THRESHOLD**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types 2.2, 2.3, 2.2A | 1½" high | Will provide transition strips with 8.33% slope. Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |

**THERMOSTAT**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types 1.1, 2.2, 2.3, 1.2, 2.1B, 2.2A, 2.1A | Thermostat is greater than 48" AFF | Will provide wireless thermostat control upon the request of a resident or prospective resident. [1] |

**ELECTRICAL OUTLETS - LAVATORY**

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Type 2.3 | Receptacle located on wall to left of lavatory bowl is 47" AFF measured to the centerline of the top duplex outlet | Will provide power strip such that outlet can be 46" AFF max. Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest. |

---

[1]   Defendants agree to maintain at least four (4) such remote controls at Parkside at all times.

1

## KITCHEN OUTLETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types 2.1A, 2.1B | Centerline of electrical receptacle is not 36" min. from the corner | Will provide power strips such that outlet can be located a minimum of 36" from the corner. |
| Unit Type 2.2A | Centerline of electrical receptacle is not 12" min. from the wall to the left of range | Will provide power strip such that outlet can be located a minimum of 12" from the wall to the left of range. |

## OBSTRUCTION OF GRAB BAR LOCATION – BATHROOM TOILET
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 6

| UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|
| Unit Types 1.1, 1.2 | Banjo countertop obstructs rear grab bar location | Will remove or modify the banjo countertops such that the countertops do not obstruct the grab bar location in 10 of the units.  Retrofit will be made upon the request of resident or prospective resident, upon vacancy, or within the term of the Stipulation, whichever is the earliest.<br><br>For the remaining units, will remove or modify the banjo countertops such that the countertops do not obstruct the grab bar location upon the request of resident or prospective resident. |

2

**APPENDIX C**

**NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS**
**OF RETROFITS FOR RIVERSIDE AND PARKSIDE,**
**WHICH MUST BE SCHEDULED WITHIN THE NEXT SIX MONTHS**

Ginsburg Development Companies is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, certain apartments at Riverside and Parkside to provide greater accessibility for people with disabilities. Your unit or prospective unit is one of those that has been identified as appropriate for certain retrofits. We want you to know that you may request to have your apartment, or prospective apartment, modified now at no cost to you. Should you have to move out temporarily, we will pay reasonable relocation and housing expenses while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of door entries and thresholds to ensure accessibility to persons in wheelchairs;

- Modification of bathrooms to ensure accessibility to persons in wheelchairs;

- Modification of kitchen countertops to ensure usability by persons with disabilities; or

- Provision of power strips for electrical outlets.

While you do not have to request the modifications now, you should be aware that some of this work may be required at some point during the term of your lease. A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

**APPENDIX D**

**ACKNOWLEDGMENT OF RECEIPT OF STIPULATION**

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Settlement Stipulation, or a summary thereof, in *United States of America v. Ginsburg Development Companies, LLC*, 16 Civ. 7301 (NSR) (S.D.N.Y.), and have been given instruction on (1) the terms of this Settlement Stipulation, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Settlement Stipulation and the Fair Housing Act. I have had all of my questions concerning the Settlement Stipulation answered to my satisfaction.

_____, 20____


_____
Employee Signature

**APPENDIX E**

**NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM INADEQUATE
ACCESSIBLE FEATURES AT RIVERSIDE AND PARKSIDE**

On _____ 2017, the United States District Court for the Southern District of New York approved a settlement resolving a lawsuit brought by the United States Department of Justice against certain builders and developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of Riverside and Parkside.

Under this settlement, a person may be entitled to receive monetary relief if, in relation to any of the properties identified below, he or she:

- WAS DISCOURAGED FROM LIVING AT THAT PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

- HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT THAT PROPERTY;

- PAID TO HAVE AN APARTMENT AT THAT PROPERTY MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

- WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AT THAT PROPERTY.

The properties relevant to this notice are:

- RIVERSIDE                    • PARKSIDE

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-0840. You may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than _____, 20__.

**APPENDIX F**

**RELEASE FORM**

In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Settlement Stipulation entered in *United States of America v. Ginsburg Development Companies, LLC*, 16 Civ. 7301 (NSR) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


_____
(Signature)


_____
(Print name)


_____
(Date)

**APPENDIX G**

**ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STIPULATION**

I _____, am an employee of _____ and my duties include _____ . I have received and read a copy of the Settlement Stipulation, or a summary thereof, in *United States of America v. Ginsburg Development Companies, LLC*, 16 Civ. 7301 (NSR) (S.D.N.Y.), and have been given instruction on (1) the terms of this Settlement Stipulation, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Settlement Stipulation and the Fair Housing Act. I have had all of my questions concerning the Settlement Stipulation answered to my satisfaction.

_____, 20___

_____
Employee Signature

## APPENDIX H

## CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act. I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
Employee Signature


_____
Print Name


_____
Date